976 So.2d 1155 (2008)
Silvia SALAZAR, Appellant,
v.
Orestes SALAZAR, Appellee.
No. 4D07-1407.
District Court of Appeal of Florida, Fourth District.
March 12, 2008.
*1156 Richard H. Gaines and Todd M. Feldman of Greenspoon Marder, P.A., Fort Lauderdale, for appellant.
Orestes Salazar, Boca Raton, pro se.
CONNER, BURTON C., Associate Judge.
Silvia Salazar raises four issues on appeal concerning the final judgment dissolving her thirty-one year marriage to Orestes Salazar. We affirm the trial court on the denial of Silvia's request for attorney's fees and costs from Orestes. We reverse on the three other issues.

Periodic Alimony
The parties had one minor child who was thirteen years old at the time of the final hearing and who needs "special attention."[1] At the time of the final hearing, Orestes worked for Holiday Inn making $15 per hour. He routinely worked overtime to pay the monthly bills. During the pendency of the divorce, Orestes paid all the expenses for the marital home while renting a room there. Additionally, he paid Silvia's car insurance. Silvia worked for a collection agency earning $10 per hour but for the eight months leading up to the final hearing, she had been working only twenty-five hours per week. In the final judgment, the trial court found that Orestes had a gross monthly income of $3,941 with his usual and customary overtime pay. The trial court also found that Sylvia had a gross monthly income of $1,075; however, the trial court imputed additional income on the theory that she previously worked full-time and there was no reason she could not return to full-time employment. Additionally, Silvia had a bonus income of $200 each month. Thus, the trial court imputed a gross monthly income of $1,920.
The trial court found that Silvia demonstrated a need for some type of temporary *1157 alimony, but Orestes did not have the current ability to pay alimony. No alimony was awarded to Silvia in the final judgment.
On appeal, Silvia argues alternatively that she should have been awarded rehabilitative alimony, bridge-the-gap alimony, permanent periodic alimony, lump sum alimony, or nominal permanent periodic alimony. We agree with the trial court that the facts of this case do not support an award of rehabilitative alimony, bridge-the-gap alimony, or lump sum alimony. However, the facts do support an award of permanent periodic alimony or nominal periodic alimony and it was an abuse of discretion not to award either one.
This was a long-term marriage. There is a presumption in favor of alimony. See Ondrejack v. Ondrejack, 839 So.2d 867, 871 (Fla. 4th DCA 2003). "Two primary considerations in determining permanent periodic alimony are `the monetary needs of the receiving spouse and the ability of the other spouse to pay.'" Lamont v. Lamont, 851 So.2d 898, 899-900 (Fla. 4th DCA 2003) (citing Weeks v. Weeks, 416 So.2d 811, 812 (Fla. 4th DCA 1982)). In Lamont, the parties were married for twenty-three years. Id. at 899. During the separation, the husband had a total monthly income of $2,993 and the wife had a monthly social security income of $525. Id. In the final judgment, the trial court awarded the wife $1,000 per month from the husband's retirement income using a qualified domestic relations order (QDRO) as part of an equitable distribution scheme, leaving the husband with a total monthly income of $2,993 and the wife with a total monthly income of $1,525. The trial court found the wife had a need for alimony but the husband did not have a "real ability to pay." Id. This court reasoned that because the husband paid for the wife's monthly expenses of $900 a month plus credit card payments of $400 a month during the pendency of the divorce, the husband had the ability to pay alimony, therefore the trial court erred in finding the husband did not have the ability to pay alimony. Id. at 900.
Although this case is arguably distinguishable from Lamont because here Orestes was renting a room from Silvia to allow him to keep paying the monthly expenses on the marital home and Silvia's car insurance, and we assume such an arrangement would not continue after the marriage was dissolved, we cannot ignore that Orestes has $2,019 more in monthly income than Silvia even after income was imputed to her by the trial court. We find the failure to award some periodic permanent alimony, or at least nominal periodic alimony, is an abuse of discretion given the disparity in post-judgment income of the parties after a long-term marriage. See McClay v. McClay, 447 So.2d 1026 (Fla. 4th DCA 1984); Munger v. Munger, 249 So.2d 772 (Fla. 4th DCA 1971).

Uninsured Medical and Dental Expenses for the Child
The trial court ordered the parties to equally divide any uninsured medical and dental expenses for the child despite determining Silvia's percentage share of child support to be 36% and Orestes's share to be 64%. We find this to be reversible error.
Section 61.30(8), Florida Statutes (2006), provides that children's uncovered medical expenses are to be paid by each parent on a percentage basis. Both this court and the third district have found error when the trial court fails to follow the statutory requirement. See Stern v. Chovnick, 914 So.2d 524 (Fla. 4th DCA 2005); Forrest v. Ron, 821 So.2d 1163 (Fla. 3d DCA 2002).

Claiming Dependent Child for Income Tax Purposes
Silvia contends the trial court failed to consider tax consequences and *1158 abused its discretion when it ordered the parties to alternate claiming their child as a dependent for income tax purposes. A trial court has the discretion to transfer the dependency exemption to the noncustodial parent. See Vick v. Vick, 675 So.2d 714, 719 (Fla. 5th DCA 1996). "[T]he benefit to the noncustodial parent is designed to make more money available for child support through tax savings." Id. (finding the trial court erred when it did not consider the transfer of the exemption in calculating the parties' income).
Section 61.30(11)(a)(8), Florida Statutes (2006), states "the court may adjust the minimum child support award, or either or both parents' share of the minimum child support award, based upon the following conditions: the impact of the Internal Revenue Service dependency exemption, and waiver of that exemption. The court may order the primary residential parent to execute a waiver of the Internal Revenue Service dependency exemption if the noncustodial parent is current in support payments." This statute has been construed as giving "the trial court discretion to order the custodial parent to execute a release of the claim for income tax deduction." Harris v. Harris, 760 So.2d 152, 154 (Fla. 2d DCA 2000). "The trial court cannot allocate the dependency tax exemption directly. It can, however, require the custodial parent to execute a waiver transferring the exemptions to the noncustodial parent." Wamsley v. Wamsley, 957 So.2d 89, 92 (Fla. 2d DCA 2007); see also Robertson v. Bretthauer, 712 So.2d 1140, 1141 (Fla. 3d DCA 1998) ("The majority American rule is that although the trial court does not have the absolute power to allocate the exemption directly, it can require the custodial parent to transfer the exemption to the non-custodial parent through the execution of a waiver"). The dependency exemption must also be conditioned on the former spouse being current with support payments. See Davies v. Turner, 802 So.2d 1195 (Fla. 1st DCA 2002) (finding the trial court erred in not making the exemption to be claimed on alternate years conditional on former husband being current with support payments); see Robertson, 712 So.2d at 1141 ("transfer of the dependency exemption to the non-custodial parent is conditioned on that parent being current with support payments").
We do not find the trial court erred in determining that Orestes should get the benefit of claiming the parties' child as a dependent for income tax purposes every other year. However, the trial court did not require Silvia, as custodial parent, to execute a waiver transferring the exemptions to Orestes, and also did not condition the waiver on Orestes being current with his child support payments. We find the trial court erred by not structuring the transfer of the exemption in accordance with the statutory requirements.
The trial court is reversed and remanded with instructions to determine the amount of permanent periodic alimony or nominal periodic alimony to be awarded to Silvia, to order the parties to pay uncovered medical and dental expenses for the child in proportion to their percentage share of the basic child support obligation, and to require Silvia to execute waivers in favor of Orestes to claim their child as a dependent for income tax purposes every other year, if Orestes is current on his child support obligation at the time the child is claimed as an exemption.
WARNER and FARMER, JJ., concur.
NOTES
[1] The parties dispute whether the child suffers from attention deficit disorder or autism.