# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**FLETCHER LEE SANDERS,**
Appellant,

v.

**ULYSSES PETERSON-SANDERS,**
Appellee.

No. 4D20-2082

[May 26, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Diana A. Keever-Agrama, Judge; L.T. Case No. 50-2018-DR-007854-XXXX-NB.

Erika A. Powers of Jeff T. Gorman Law Offices, Stuart, for appellant.

Karen O'Brien Steger of Steger Law, Stuart, for appellee.

FORST, J.

Former Husband appeals from the trial court's final judgment of dissolution of marriage, raising four issues. We agree in part with Former Husband's arguments and thus reverse and remand for further proceedings in accordance with this opinion.

## Background

The parties married in 2008, and Former Wife vacated the marital home in 2018. Soon thereafter, both parties petitioned for dissolution of marriage. There were no child custody or child support issues; the proceedings primarily focused on the equitable distribution of the parties' assets, primarily the marital home and two of the parties' three vehicles. The bench trial was set for three hours, and the trial court reminded the parties of the need to finish the trial within this time frame. In addition to the parties, the only other witness was a real estate agent, who testified regarding a potential sale of the marital home.

Former Husband testified that he earned an annual salary of $35,000 for the past eight years and that Former Wife was the "bread winner" of

the relationship. Former Wife had earned an annual salary of approximately $125,000 for the prior three years but had recently been laid off and was searching for a new job at the time of trial.

The primary assets of the former couple consisted of the marital home and three vehicles.[1] The court ordered the sale of the marital home to reduce the marital debts and awarded each former spouse one of the vehicles deemed to be of equivalent value. Each former spouse also had two retirement accounts. Following the loss of her job, Former Wife liquidated both of her accounts to pay for living expenses. Former Husband failed to show any animus or intentional misconduct, and thus the trial court deemed the funds from both accounts to be nonmarital. Former Husband's retirement accounts were both deemed to be marital assets because he did not present any evidence as to the amount of the premarital contributions.

The former couple had also accumulated substantial liabilities throughout the marriage as detailed in each party's financial affidavits. The marital home—valued at $329,000—bore a mortgage of approximately $180,000. The values of both marital vehicles were lower than the associated auto loans such that each had negative equity. Beyond these loans, Former Wife introduced evidence of additional liabilities that she had incurred during the marriage in the amount of $123,196.62. The trial court found that Former Husband only introduced competent substantial evidence to support a total of $9,515.82 in marital debt attributable to himself.[2]

Based on the discrepancy between Former Wife's marital liabilities ($123,196.62) and Former Husband's marital liabilities ($9,515.82), the trial court ordered Former Husband to make a balancing payment of $56,840.40 to Former Wife.

**Analysis**

*I.    Due Process Claim*

On appeal, Former Husband contends that his due process rights were violated by the trial court's strict adherence to a three-hour time limit for the trial.

---

[1] The couple leased the third vehicle with the lease expiration terminating shortly after the trial. Former Husband was assigned the $5,051.50 excess milage penalty for the vehicle.

[2] Former Husband's financial affidavits indicated that he had incurred total marital liabilities of $20,926.22.

2

"Whether the trial court has complied with the guarantees of due process is subject to de novo review." *VMD Fin. Servs., Inc. v. Loan Purchase Assocs., LLC*, 68 So. 3d 997, 999 (Fla. 4th DCA 2011) (quoting *Dep't of Revenue ex rel. Poynter v. Bunnell*, 51 So. 3d 543, 546 (Fla. 1st DCA 2010)). "Due process requires that each litigant be given a 'full and fair opportunity to be heard.'" *Dobson v. U.S. Nat'l Bank Ass'n.*, 217 So. 3d 1173, 1174 (Fla. 5th DCA 2017) (quoting *Vollmer v. Key Dev. Props., Inc.*, 966 So. 2d 1022, 1027 (Fla. 2d DCA 2007)).

"The opportunity to be heard must be 'full and fair, not merely colorable or illusive.'" *Julia v. Julia*, 146 So. 3d 516, 520 (Fla. 4th DCA 2014) (quoting *Pelle v. Diners Club*, 287 So. 2d 737, 738 (Fla. 3d DCA 1974)). In the instant case, neither party objected to the hurry-up nature of the trial. Although the trial court did not provide either party with an opportunity to make closing arguments, neither party requested to present closing arguments at any point during the proceedings. Moreover, Former Husband was not foreclosed from either offering direct testimony, calling witnesses, or conducting cross-examination of Former Wife. Former Husband failed to raise a single objection to the expeditious nature of the trial and did not inform the trial court, formally or informally, that additional time was required. Thus, this issue was not properly preserved for appellate review and there is no error apparent on the face of the record. *See, e.g.*, *Aills v. Boemi*, 29 So. 3d 1105, 1108 (Fla. 2010) (holding that "[p]roper preservation of error for appellate review generally requires three components[,]" starting with "a timely, contemporaneous objection at the time of the alleged error"). Nonetheless, we reiterate that trial courts need to "manage their courtrooms so that the people's business may be conducted fairly [as well as] efficiently, and expeditiously." *Julia*, 146 So. 3d at 522 (quoting *Smith v. Smith*, 964 So. 2d 217, 218 (Fla. 2d DCA 2007)).

## II.    Equitable Distribution

Former Husband next argues the trial court erred in several respects in determining the parties' equitable distribution.

"The standard of review for a trial court's equitable distribution of marital assets and liabilities is abuse of discretion." *Callwood v. Callwood*, 221 So. 3d 1198, 1201 (Fla. 4th DCA 2017) (citing *Pierre v. Pierre*, 185 So. 3d 1264, 1265 (Fla. 4th DCA 2016)).

"The parties in a dissolution of marriage action have an obligation 'to present evidence of the existence and value of marital assets and the existence and balances due of marital debts in order for the court to

include them in the final judgment.'" *Gaetani-Slade v. Slade*, 852 So. 2d 343, 345 (Fla. 1st DCA 2003) (quoting *Mobley v. Mobley*, 724 So. 2d 697, 697 (Fla. 5th DCA 1999)). "A trial judge has no duty under section 61.075 to make findings of value if the parties have not presented any evidence on that issue." *Aguirre v. Aguirre*, 985 So. 2d 1203, 1207 (Fla. 4th DCA 2008) (citing *Simmons v. Simmons*, 979 So. 2d 1063, 1064 (Fla. 1st DCA 2008)).

Initially, with respect to the trial court's rulings concerning the marital home and the parties' vehicles, we find no abuse of discretion and affirm without discussion. Additionally, Former Husband argued that he began contributing to one of his retirement accounts five years prior to the parties' marriage. However, because "no evidence was presented at trial as to the value or extent" of the non-marital component, the trial court properly deemed both retirement accounts to be marital assets and split them 50-50.

We thus focus on the trial court's calculations regarding the other assets and liabilities. Former Husband's financial affidavits listed multiple liabilities from various credit card/charge accounts with the outstanding balances. The financial affidavits were admitted into evidence and Former Wife offered no argument contradicting the amounts listed. The excluded liabilities included five credit card/charge accounts, which, had they been included in the schedule of marital debts, would have reduced the total amount of the equalizing payment from Former Husband to Former Wife. Thus, remand is appropriate for the trial court to consider Former Husband's financial affidavit evidence regarding liabilities in recalculating the equitable distribution of the parties' assets.

### III. Equalizing Payment

Finally, Former Husband argues the trial court failed to make an express finding that he had the ability to make the originally ordered equalizing payment of $56,840.40 without substantially endangering his economic status. We agree.

In *Abramovic v. Abramovic*, 188 So. 3d 61 (Fla. 4th DCA 2016), we noted "[a] lump sum equalizing payment to accomplish equitable distribution 'is properly awarded only when the evidence reflects a justification for such an award *and the ability of the paying spouse to make the payment without substantially endangering his or her economic status.*'" *Id.* at 63–64 (emphasis in original) (quoting *Fortune v. Fortune*, 61 So. 3d 441, 446 (Fla. 2d DCA 2011)); *see also Smith v. Smith*, 226 So. 3d 948, 955 (Fla. 4th DCA

2017) (trial court erred in failing to consider a former husband's ability to pay an equalizing payment).

Here, Former Husband clearly has substantial liabilities in addition to the responsibility to care for his son. Although Former Husband could make the equalizing payment out of the proceeds from the sale of the marital home, there is still an issue as to Former Husband's financial viability following the sale of the home and the distribution of the equalizing payment that must be explicitly addressed on remand.

## Conclusion

We therefore reverse and remand for an evidentiary hearing on the amount of Former Husband's liabilities that were excluded from the final judgment but included in his financial affidavits. Following the hearing and recalculation of the equitable distribution, the trial court must make an express finding as to the extent in which an equalizing payment can be made that does not substantially endanger the economic status of Former Husband.

*Affirmed in part, reversed and remanded in part.*

CIKLIN and GERBER, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**