DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANEMEY K. HUERTAS DEL PINO,**
Appellant,

v.

**CARLOS E. HUERTAS DEL PINO,**
Appellee.

No. 4D16-3736

[November 1, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jessica Ticktin, Judge; L.T. Case No. 2015-DR-007005.

Jaclyn Ann Behar of BeharBehar, Sunrise, for appellant.

No appearance for appellee.

KLINGENSMITH, J.

Anemey K. Huertas Del Pino ("Wife") appeals a final judgment of dissolution that ended her long-term marriage to Carlos E. Huertas Del Pino ("Husband"). Wife argues the trial court erred in holding that, for the purposes of awarding alimony, income should be imputed to her based on her eligibility for Social Security retirement benefits she had not yet applied to receive. We agree. Because of error in the trial court's determination regarding the imputation of Social Security income to Wife, and the effect of that imputation on the award of alimony to her, we reverse.

For alimony purposes, trial courts may impute income to a voluntarily unemployed or underemployed spouse in determining the parties' earning capacities, sources of income, and financial circumstances. *See* § 61.08(2)(e), (i), (j), Fla. Stat. (2016); *Rabbath v. Farid*, 4 So. 3d 778, 781–82 (Fla. 1st DCA 2009); *Freilich v. Freilich*, 897 So. 2d 537, 540 (Fla. 5th DCA 2005). The burden of proof is on the party seeking to impute income to the other spouse. *Burkley v. Burkley*, 911 So. 2d 262, 269 (Fla. 5th DCA 2005). Where a court imputes income to a spouse, the reviewing court must determine whether competent, substantial evidence supports imputation. *Leonard v. Leonard*, 971 So. 2d 263, 266 (Fla. 1st DCA 2008).

The final judgment detailed Wife's employment and education history throughout the marriage, which was minimal because she was a stay-at-home mother during most of that time. When the Petition for Dissolution was filed, Wife was sixty-two years old and had earned a GED. In her last employment, she worked for a California cosmetics company, and earned $12 per hour. Two months prior to the filing of the Petition for Dissolution, she voluntarily left her job and came to Florida to expedite the divorce and avoid the high cost of California living. Wife's testimony established that she desired to work full-time and intended to do so, but had not received a single response to any job applications. Even though her last job paid $12 per hour, Wife testified that she did not believe she could make $12 an hour in Florida due to her age, and because the minimum wage in Florida was between $8 and $9 per hour.[1] The trial court found that Wife was voluntarily unemployed or underemployed because according to the final judgment "[t]he Wife admitted she is able to work, and should be able to earn $10/hour, working 40 hours a week."

Additional testimony revealed that, although she was eligible to receive $640 per month in Social Security income, Wife chose to defer receipt of those benefits so that she might receive $900 per month in Social Security income after her sixty-fifth birthday. From this evidence, the trial court added an additional $640 per month to Wife's monthly imputed income for the purposes of calculating alimony. The trial court's final judgment stated, "[T]he Wife's gross income is $1,907.33. However, if the Wife takes her Social Security income in the amount of $640.00 per month, her gross income will be $2,547.33, per month." After imputing this income to her, the trial court also concluded that "[t]he Wife has the ability to support herself to earn income in the total amount of $2,547.33 per month, which provides enough of a surplus for the Wife to find suitable housing." Thus, the record is clear that the trial court improperly considered Wife's potential monthly Social Security benefits in its alimony computation.

Wife argues that her Social Security benefits may not be included as income unless she receives payments from the Social Security Administration ("SSA"). Under section 61.08(2):

> In determining whether to award alimony or maintenance, the
> court shall first make a specific factual determination as to

---

[1] As of 2016, Florida's minimum wage was $8.05. *See Florida Minimum Wage History 2000 to 2017,* FLORIDA DEPARTMENT OF ECONOMIC OPPORTUNITY, http://www.floridajobs.org/docs/default-source/2017-minimum-wage/florida-minimum-wage-history-2000-2017.pdf?sfvrsn=2 (last visited October 13, 2017).

whether either party has an actual need for alimony or maintenance and whether either party has the ability to pay alimony or maintenance. If the court finds that a party has a need for alimony or maintenance and that the other party has the ability to pay alimony or maintenance, then in determining the proper type and amount of alimony or maintenance under subsections (5)-(8), the court shall consider all relevant factors, including, but not limited to:

. . . .

(e) The earning capacities, educational levels, vocational skills, and employability of the parties and, when applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.

. . . .

(i) All sources of income available to either party, including income available to either party through investments of any asset held by that party.
(j) Any other factor necessary to do equity and justice between the parties.

The monthly income a person receives once he or she applies for Social Security benefits depends on several factors, including the person's age when applying for benefits, the person's full retirement age, how long the person worked, and how much the person earned. *See* 42 U.S.C. §§ 402-415. However, an individual who elects to receive benefits before full retirement age will suffer a permanent reduction in benefits. *See* 42 U.S.C. § 402(q)(1) (2015).

It is well-established that Social Security benefits a party receives can be properly considered as income in awarding alimony. *See Lamont v. Lamont*, 851 So. 2d 898, 899 (Fla. 4th DCA 2003). However, the question here is different: whether Social Security benefits should be imputed as income where a person is eligible to receive benefits, but has not yet applied for or received them.

Here, Wife was not receiving Social Security benefits from the SSA when the trial court decided alimony. The evidence instead shows that Wife chose not to receive her Social Security benefits because she determined that the economic value of receiving the benefits early was outweighed by

3

the benefit of electing to receive them later. Because Wife was not receiving payments from the SSA, these deferred benefits were not currently available income to Wife. Only those benefits that are paid from the SSA and delivered to the recipient may be considered part of a party's income for purposes of calculating alimony under section 61.08.

Although there are no Florida cases directly on point, the rationale of *Moore v. Moore*, 619 N.W.2d 723 (Mich. Ct. App. 2000), supports our conclusion. In *Moore*, the wife requested that the trial court increase her alimony award, but the husband objected because the wife had not exercised her ability to collect payments from her pension. *Id.* at 724. The husband argued that the potential pension benefits should be imputed as part of the wife's income. *Id.* The trial court refused to impute the potential pension income, and stated that it would not consider the pension benefits as income to either party until that party began receiving the pension benefits. *Id.* The Michigan Court of Appeals held:

> In this case, in determining whether imputing income to plaintiff was appropriate, the court should have considered whether plaintiff could elect to draw her share of the pension now without any reduction in benefits. If this is the case, we believe that plaintiff would be voluntarily reducing her income . . . On the other hand, if by taking her share of the pension now she would receive a reduced amount, it is inappropriate to impute the pension benefits as income. *For plaintiff to defer election of pension benefits to a later date when the benefits would be larger should not be viewed as a voluntary reduction in income, but rather as a possibly prudent investment strategy.*

*Id.* at 725 (emphasis added).

We agree with the *Moore* court's conclusion. If the evidence shows that a party would receive the same Social Security benefits regardless of when he or she elected to receive the distributions, and absent some other compelling reason, then the decision to defer the benefits may properly be characterized as a voluntary reduction in income. But if the evidence shows that a party would receive larger benefits if he or she decided to defer the benefits until a later time, and absent any evidence suggesting a contrary motivation, then such a decision could properly be characterized as a prudent investment strategy and thus not subject to imputation.

We recognize that a putative recipient's motivation is not dispositive for the purposes of the trial court's decision, and in some situations, it is not

4

relevant at all. But as we have previously held, a party's motivation in voluntarily reducing his or her income can be an appropriate factor for the trial court to consider in determining a party's ability to pay. *See Zarycki-Weig v. Weig*, 25 So. 3d 573, 575 (Fla. 4th DCA 2009). Here, there was no evidence of any bad faith on Wife's part, and she articulated a rational reason for delaying her application for Social Security benefits—namely, that she would receive greater benefits by postponing her receipt of benefits until the age of sixty-five.

By this opinion, we do not intend to create a rule that income should never be imputed based on eligibility for government benefits; furthermore, a bright-line rule is not only unnecessary in light of existing case law, but also inadvisable. *See Rimer v. Rimer*, 605 S.E.2d 572, 575 (S.C. Ct. App. 2004) (holding that formulaic principles and bright-line rules will only hinder a trial court's discretion in such a fact-intensive area of law). Therefore, under appropriate circumstances, a trial court might properly consider eligibility for government benefits and impute them as income, or make other determinations based on a party's eligibility to receive Social Security benefits. *See Faber v. Faber*, No. 46464-1-II, 2016 WL 236468 (Wash. Ct. App. Jan. 19, 2016) ("[T]he possibility that one or both parties may receive Social Security benefits is a factor the court may consider in making its distribution of property."); *Clarke v. Clarke*, 823 N.W.2d 318, 324 (Mich. Ct. App. 2012) (holding that if a party would receive the same Social Security benefits regardless of when the benefits are received, then absent compelling reasons, the decision to defer the benefits may be deemed a voluntary reduction of income). *Cf. Searcey v. Searcey*, 923 So. 2d 528, 530 (Fla. 2d DCA 2006) ("[The trial court] may not consider any possible future social security payments to the [spouse when deciding alimony].").

The trial court effectively equated Wife's decision to postpone applying for Social Security benefits with voluntary underemployment such that Wife's eligibility to receive those benefits was imputed to her as income. Under the circumstances of this case, this was error. We hold that when the evidence establishes that a party has declined to receive early Social Security retirement benefits to receive higher benefits later, this alone does not demonstrate an unexercised ability to earn. Therefore, we reverse and remand for the trial court to reconsider the factors enumerated in section 61.08(2), without incorporating Wife's unpaid Social Security benefits into the calculation of her imputed monthly income for the purposes of establishing an alimony award. We affirm without comment on all other issues raised on appeal.

*Affirmed in part, reversed in part and remanded.*

GROSS and CIKLIN, JJ., concur.

* * *

*Not final until disposition of timely filed motion for rehearing.*